## STOLL *v.* PEPPER.

If a distiller uses material for distillation in excess of the estimated capacity of his distillery, according to the survey made and returned under the provisions of the law regulating that subject, but, in the regular course of his business, pays the taxes upon his entire production, he cannot be again assessed at the rate of seventy cents on every gallon of spirits which the excess of material used should have produced, according to the rules of estimation prescribed by the internal-revenue law.

ERROR to the Circuit Court of the United States for the District of Kentucky.

The court below found the following facts : —

Robert P. Pepper, was a distiller within the seventh district in the State of Kentucky, and the surveyed capacity of his distillery was $151\frac{82}{100}$ bushels per day. During the months of May, June, July, and August, 1873, he produced spirits in excess of the surveyed capacity to the number of $2,261\frac{1}{4}$ gallons, on which a tax was payable amounting in the aggregate to the sum of $1,582.86.

The surveyed capacity of the said distillery was duly reported to the Commissioner of Internal Revenue, and the spirits produced, including the said excess, were drawn from the receiving cistern, and placed in the government warehouse attached to the distillery, and were duly reported and assessed, and bonds for the payment of the tax was given according to law; all of which was duly reported to the Commissioner of Internal Revenue.

Afterwards the commissioner made an assessment of seventy cents per gallon for all the spirits produced in excess of the surveyed capacity during the months of May, June, July, and August, and directed the defendant Stoll, collector of the seventh district, to collect the same.

This assessment was made under the twentieth section of

the act of June 6, 1872, and was made for the same spirits upon the same number of gallons, and for the same amount for which the taxes had already, under the first regular reports, been assessed and secured by bond, and which have since been paid, so that a collection of this assessment by the Commissioner of Internal Revenue would enforce a double payment of the tax upon the spirits.

In the production of spirits in excess of the estimated capacity no evasion of law was intended, and no benefit was derived from it by Pepper, the plaintiff, but the distillery was run beyond its surveyed capacity with the knowledge of the government officers, including the collector.

On the 9th of January, 1874, the defendant, after having made demand of the plaintiff for payment of the amount assessed for the said excess, and the plaintiff having refused payment, seized one hundred and fifty barrels of spirits belonging to the plaintiff, and containing 6,497½ proof gallons, and after advertising the same for ten days, sold the whole lot at Frankfort, the place of seizure, for the sum of $1,798.70, being the amount of taxes assessed, inclusive of costs and penalties.

Said plaintiff before and at the time of seizure, and at the sale, in writing, protested to the defendant against the said proceedings, and notified him that he would hold him liable; and at the time of the sale of the said spirits the plaintiff was present, and warned bidders that the sale was illegal, and he would hold the purchasers responsible for the value of the whiskey.

Before this suit was brought, the plaintiff appealed to the Commissioner of Internal Revenue, according to law, for the correction of the said assessments as erroneous and illegal, and the said appeal was rejected. The spirits seized were, at the time of the seizure and up to the time of sale, of the market value of fifty-five cents per gallon, and of the aggregate value of $3,573.62. The court being of opinion that the second assessment by the Commissioner of Internal Revenue was not authorized by law, but that the plaintiff could not recover more than the amount actually collected, with interest at the rate of six per cent per annum, gave judgment that he recover the sum of $1,887.43, with interest thereon at the rate of six per cent

per annum from the twenty-fifth day of November, 1874, until paid, and his costs.

The collector then sued out this writ of error.

*The Solicitor-General* for the plaintiff in error.
*Mr. Thomas W. Bullitt, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The question in this case is, whether, if a distiller uses material for distillation in excess of the estimated capacity of his distillery, according to the survey made and returned under the provisions of the law regulating that subject, and in the regular course of his business pays the taxes upon his entire production, he can be again assessed at the rate of seventy cents on every gallon of spirits which the excess of material used should have produced, according to the rules of estimation prescribed by the internal-revenue law. There is no pretence of bad faith. No evasion of the law was intended, and no benefit was derived by the distiller from what was done. He paid taxes on his entire production, and the second assessment was made upon precisely the same number of gallons that he had reported in his regular reports. The enforcement of this assessment, if made, will operate as double taxation, and nothing more.

The case arises under sect. 20 of the act of July 20, 1868 (15 Stat. 133), as amended June 6, 1872 (17 id. 244), and which is as follows: —

" That on the receipt of the distiller's return in each month the assessor shall inquire and determine whether the distiller has accounted for all the grain or molasses used, and all the spirits produced by him in the preceding month. If the assessor is satisfied that the distiller has reported all the spirits produced by him, and the quantity so reported shall be found to be less than eighty per cent of the producing capacity of the distillery as estimated under the provisions of this act, an assessment shall be made for such deficiency at the rate of seventy cents for every proof gallon. In determining the quantity of grain used, fifty-six pounds shall be accounted as a bushel; and if the assessor finds that the distiller has used any grain or molasses in excess of the capacity of his distillery, as estimated under the provisions of this act, an assessment shall be

made against the distiller, at the rate of seventy cents for every proof gallon of spirits that should have been produced from the grain or molasses so used in excess, which assessment shall be made whether the quantity of spirits reported is equal to or exceeds eighty per cent of the producing capacity of the distillery. If the assessor finds that the distiller has not accounted for all the spirits produced by him; he shall, from all the evidence he can obtain, determine what quantity of spirits was actually produced by such distiller, and an assessment shall be made for the difference between the quantity reported and the quantity shown to have been actually produced, at the rate of seventy cents for every proof gallon : *Provided*, that the actual product shall be assumed to be in no case less than eighty per cent of the producing capacity of the distillery, as estimated under the provisions of this act, or under the act to which this is an amendment."

Before any distiller can commence business, some person designated by the Commissioner of Internal Revenue must make a survey of his distillery, " for the purpose of estimating and determining its true spirit-producing capacity for a day of twenty-four hours." Act of 1868, sect. 10 (15 Stat. 129), amended by sect. 12, act of 1872, 17 id. 239. There is nothing in any act of Congress which requires a distiller to call for a resurvey, unless he wishes to reduce his production (15 Stat. 138, sect. 30) ; but the Commissioner of Internal Revenue may at any time direct a new survey, if he is satisfied that the one already made is " in any way incorrect or needs revision." 17 id. 239, sect. 12.

There is nowhere in the internal-revenue law any express prohibition of production in excess of the estimated capacity. The requirement of taxes to the extent of eighty per cent of the capacity was intended to guard against the danger of frauds which might arise if under-production was allowed ; but as the entire product goes from the distillery to the warehouse, and is there taxed without any deduction, it would seem that, if more than the estimated quantity was produced, the government could have no just cause of complaint. A continued over-production would be evidence to the commissioner of an incorrect survey which might need revision ; but if the distiller does not escape taxation, the government suffers no loss.

The particular section under consideration evidently relates

alone to the assessment and collection of taxes, and not to the punishment of offences. A distiller's books and his monthly returns should truly state the quantity of spirits he has produced. This section requires that upon the receipt of these returns the designated officer shall inquire and determine whether all the material used and the spirits produced have been accounted for. If he is satisfied that the production has been correctly reported, he must next inquire whether it equals or exceeds eighty per cent of the estimated producing capacity of the distillery, and, if it does not, make an assessment for the deficiency at the rate of seventy cents a gallon, — the theory of the law being that a distiller must at all events pay taxes upon eighty per cent of his producing capacity.

If, however, the officer finds that the distiller has not accounted for all the spirits he has produced, he must, from such evidence as he can obtain, determine what quantity was actually produced, and make an assessment for the difference between the quantity reported and that shown to have been produced, at the rate of seventy cents a gallon; but in no case can the actual product be assumed to be less than eighty per cent of the producing capacity of the distillery. Thus far clearly only the assessment of taxes is indicated.

There remains to be considered the provision specially applicable to this case, and that is where the officer finds that the production is in excess of the estimated capacity of the distillery. If this is an offence, it is certainly no more heinous than that of not accounting for all spirits actually produced, and as to which provision is here made only for an assessment of the tax for the deficiency. It would seem, therefore, that the object of this part of the section must have been to secure the collection of the tax, and not to impose a penalty for over-production. The provision is found immediately following that which requires the officer to determine whether the distiller has accounted for all the material used and all the spirits produced. For the purpose of verifying the return as to the quantity produced he applies the statutory rule of production to the quantity of material used, and for the purpose of verifying the report of material used he reverses the process and reduces the product to material. If he becomes satisfied that the returns are cor-

rect, and that there has been no excess of material used, he simply inquires whether the product equals or exceeds eighty per cent of the estimated producing capacity of the distillery, and if it does, his work is done.   The law is satisfied in such cases if the actual production equals or exceeds eighty per cent of the producing capacity of the distillery, or, what is the same thing, eighty per cent of the statutory estimate of the producing capacity of the material used; for in making the survey the statutory estimate of production from the material is applied, and the estimated capacity of the distillery in gallons indicates exactly the estimated quantity of material that will be used. But if an excess of material is used, a different rule is to be applied, and the tax for the excess is not to be paid on the actual product, but on what it should have been according to the statutory estimate of the producing capacity of the material. It was to insure the payment of the tax upon the excess of material at this rate that we think this provision was introduced. We cannot believe that double taxation was intended, for that would be introducing into a section of a statute apparently intended only to regulate the assessment of taxes in several classes of cases, a penal provision as to one of the classes which did not apply to the others, and when there was seemingly no cause for the unfavorable discrimination.   The provision is relieved from the charge of being superfluous by the fact that it imposes a tax upon the production of the excess of material at what it should have been according to the statutory estimate of the capacity of the material, and not upon what it actually was.

*Judgment affirmed.*