RUNKLE *v.* CITIZENS' INS. CO. OF PITTSBURGH, PENNSYLVANIA.*

(*Circuit Court, S. D. Ohio.* February, 1881.)

1. REVENUE LAW—DISTILLER—ASSESSMENT FOR MATERIAL USED IN EXCESS OF CAPACITY.

    If a distiller uses material for distillation in excess of the estimated capacity of his distillery according to the survey, but, in the regular course of his business, pays the tax upon his entire production, he cannot be again assessed the regular gallon tax on the spirits which the excess of material used should have produced.

    *Stoll* v. *Pepper*, 97 U. S. 438.

2. SAME—SAME—SAME—VOID—ATTACKED COLLATERALLY.

    An assessment therefor, and all proceedings taken thereunder, are void, and may be attacked collaterally.

3. FIRE INSURANCE — APPLICATION FOR—LIENS — ILLEGAL ASSESSMENT AND LEVY.

    A policy of insurance required that liens upon the property insured should be disclosed in the application therefor, and provided that a failure to do so would avoid the policy. *Held*, that such illegal assessment, and a seizure of the insured property thereunder, did not create a lien thereon, the non-disclosure of which would avoid the policy.

4. SAME—POLICY — CHANGE OF POSSESSION—LEGAL PROCESS — ILLEGAL ASSESSMENT AND SALE.

    The policy also provided "that if any change take place in the * * * possession of the property by legal process * * * it shall avoid the policy." *Held*, that such illegal assessment, and a seizure and sale of the insured property thereunder, were not a change of possession by legal process.

5. SAME—SAME—"LEGAL PROCESS."

    The phrase "legal process" means *valid* legal process.

6. FIRE INSURANCE—POLICY—CANCELLATION.

    The right to terminate, by cancellation, a contract of insurance which has been fairly entered into, and has taken effect, can be exercised by either party, only by a strict compliance with the provisions of the policy relating thereto.

7. SAME—SAME—SAME—BURDEN OF PROOF.

    The burden of proving a cancellation is upon the party claiming that the contract has been terminated.

8. SAME—SAME—SAME—SUFFICIENT EVIDENCE.

    And where the policy provided that the company might terminate the insurance " by giving notice to that effect and refunding a rata-

    *Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

ble proportion of the premium for the unexpired term of the policy," *held*, that the company must show that it had given the assured notice that the policy was cancelled, and that it had paid or tendered him such portion of the premium; and notice that the policy would be cancelled, or a promise to pay, or a request to call for, the premium, is insufficient.

9. SAME—SAME—SAME — POWER OF AGENTS — DELEGATUS NON POTEST DELEGARE.

Agents of an insurance company cannot delegate to others the power to cancel a policy; but it is not necessary that they should, in person, deliver the notice and pay or tender the return premium.

*Taft & Lloyd* and *L. Geiger*, for plaintiff.

*C. D. Robertson*, for defendant.

SWING, D. J., (*charging jury*.) The action in this case is brought by the plaintiff upon a policy of insurance issued by the defendant to the plaintiff on the eighteenth day of May, 1878, insuring plaintiff against loss and damage by fire upon a mill and distillery to the amount of $1,000 The defendant denies liability for the reason that the policy made the application a part of it, and provided that if any untrue answers or statements were made the policy should be void; that prior to the application a tax had been assessed by the commissioner of internal revenue against the plaintiff; that a distraint warrant had been issued upon such assessment, and the distillery had been seized by virtue thereof, and that said tax was therefore a lien upon said property; and that in the statements and answers in regard to liens this lien was not disclosed. The defendant also claims that by the policy it is provided that if the possession of the property should be changed by legal process the policy should be void, and that by virtue of said tax and distraint the property was seized by an officer of the government, who sold the same, by which the possession was changed. The defendant further claims that the policy was cancelled. The plaintiff, by reply, denies the legality of the assessment of taxes, the issuing and levy of the distraint warrant, and the sale by virtue thereof, and denies the cancellation of the policy.

It appears from the evidence in the case that the plaintiff was a distiller prior to the issuing of the policy; that before

he commenced business a survey of his distillery had been made, and its true spirit-producing capacity had been estimated and determined, and reported in accordance with the provisions of, and regulations under, the internal revenue laws. It further appears that for a short period of time the distiller had produced spirits in excess of the surveyed capacity of the distillery; that all the spirits produced by him, including the excess, were drawn from the receiving cisterns and placed in the government warehouse, were duly reported and assessed, and that the taxes upon all of said spirits thus produced had been paid, and that the commissioner of internal revenue had made an assessment of 70 cents on the gallon for the spirits produced in excess of the surveyed capacity, and directed the collection thereof; that the collector had placed this upon his list and had issued his distraint warrant, under which he had seized the distillery and sold it; and that some months after, and before the fire, the plaintiff had paid the amount of the taxes thus assessed, with interest, penalty, and costs, and had applied to the government to have them refunded. If this tax was legally assessed, it had undoubtedly, by the provisions of the law, and the seizure and levy upon it by the distress warrant, become a lien upon the property which the plaintiff should have disclosed under his application; but whether it was legally assessed will be discussed in connection with the provision of the policy in regard to the change of possession. The policy provided "that if the property be sold or transferred, or any change take place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, it shall avoid the policy." The language of this provision is "legal process or judicial decree." If this tax had been legally assessed against the property, and the distraint was legally issued, and the property seized by virtue of the distraint, and possession taken thereof, and a sale made under these proceedings, by which the possession was changed, then it would be a change of possession by virtue of legal process which would work a forfeiture of the policy.

It is contended by the defendant that the change of possession does not depend upon the legality of the assessment of these taxes, there having been in fact a distraint warrant issued and the property seized under it and sold; that the possession was thereby changed by legal process. I cannot agree with learned counsel for defendant in this proposition. The change of possession which should work a forfeiture of this policy should not only be a change of possession in fact, if it be by virtue of legal process, but it must have been a change of possession by virtue of valid legal process. If it were not a valid legal process it would be of no binding force upon him or anybody else. The parties did not contemplate by this provision any change of possession which might be brought about by proceedings in the nature of legal proceedings, or under the forms of law. It could not have been contemplated by the parties that if an officer of the court should take an execution issued without judgment, and levy it upon and sell this property, that this would have been a change of possession by legal process. Such a process would not be legal. And so in this case, if there had been no legal assessment of taxes by the commissioner of internal revenue, if, under the law, he had no power to make such an assessment of taxes as that upon which the distraint warrant issued by which this property was seized and sold, the issuing of the distraint warrant, the seizure of the property by virtue of it, and the sale under it, were, as to this plaintiff, void.

It is said, however, by counsel for defendant that the invalidity of this assessment cannot be shown by the plaintiff in this proceeding; that it cannot be attacked collaterally; that it can only be reached by appeal to the commissioner of internal revenue. The nature and character of these assessments were very fully discussed in the case of *U. S.* v. *Clinkenbeard,* 21 Wall. 65. In that case the court below held as is claimed by the defendants. The case was taken to the supreme court of the United States upon error, and the judgment of the court below was reversed. Justice Bradley, in delivering the opinion of the court, speaking of the nature of

such assessments, says: "Is he precluded by any general rule of law from setting up such a defence? Has an assessment of a tax so far the force and effect of a judicial sentence that it cannot be attacked collaterally, but only by some direct proceeding, such as an appeal or *certiorari*, for setting it aside? It is undoubtedly true that the decisions of an assessor or board of assessors, like those of all other administrative commissioners, are of a *quasi*-judicial character, and cannot be questioned collaterally when made within the scope of their jurisdiction. But if they assess persons, property, or operations not taxable, such assessment is illegal, and cannot form the basis of an action at law for the collection of the tax, however efficacious it may be for the protection of ministerial officers charged with the duty of actual collection by virtue of a regular warrant or authority therefor."

In the case of *Stoll* v. *Pepper*, 97 U. S. 438, a case which involved the validity of an assessment for overproduction of spirits precisely as in this case, the supreme court held: "If a distiller uses material for distillation in excess of the estimated capacity of his distillery, according to the survey made and returned under the provisions of the law regulating that subject, but in the regular course of his business pays the taxes upon his entire production, he cannot be again assessed at the rate of 70 cents on every gallon of spirits which the excess of material used should have produced according to the rules of estimation prescribed by the internal revenue law." This decision is conclusive upon the question of the illegality of the assessment in this case. The commissioner had no legal power or authority, under the facts of this case, to make the assessment. All the proceedings which followed the assessment were therefore illegal, and of no binding force or effect against the plaintiff. The possession was therefore never changed by virtue of "legal process." Such proceedings had no effect upon the policy. And referring back to the first defence they did not create such a lien upon the property, the non-disclosure of which would avoid the policy. That such proceedings may be attacked collaterally I think

there can be no doubt.  *Thompson* v. *Whitman*, 18 Wall. 457;
*Knowles* v. *Gas-light & Coke Co.* 19 Wall. 58.

It is claimed by defendant that it is not liable because it
had cancelled the policy of insurance.  The policy contains,
among other provisions, the following: "It is also a condi-
tion of this insurance that it may be terminated at any time
at the request of the assured, in which case the company
shall retain only the customary short rates for the time the
policy has been in force.  The insurance may also be termi-
nated at any time at the option of the company by giving
notice to that effect, and refunding a ratable proportion of
the premium for the unexpired term of the policy."  It is
within the province of the parties to a contract of insurance
to stipulate in the policy that the assured may at any time
terminate the contract and surrender the policy, and be enti-
tled to a ratable portion of the unearned premiums; and that
the insurer may at any time at its option terminate the con-
tract and cancel the policy by giving notice to the assured to
that effect, and paying to him a ratable portion of the pre-
mium for the unexpired term.  This policy of insurance con-
tains such a stipulation.  The right, however, to terminate a
contract of insurance which has been fairly entered into, and
has taken effect, by this method, is a right which can only be
exercised by either party by a strict compliance with the
terms of the policy relating to cancellation.  Where such a
contract has been entered into and has taken effect, and
either party claims that the contract has been terminated
and put an end to by virtue of such provisions, it devolves
upon such party to establish by the evidence that the con-
tract has thus been terminated; and so in this case, the
defendant claiming that the contract has been terminated, it
must satisfy your minds by the evidence that it had given
the plaintiff notice of the cancellation of the policy, and that
it had returned or tendered to him a ratable portion of the
premium for the unexpired term of the policy.  The notice
must not be that the policy would be cancelled in the future,
but that it is cancelled, and the payment of the premium

must in fact be made or tendered. A promise to pay it in the future is not sufficient, nor is a request that the party call and receive it sufficient; it must in fact be paid or tendered to the party. In this case the policy was issued by Adam Gray & Co., who were the general agents of the defendant, and a question is made whether a general agent who issues a policy has the power of cancellation; but as it is admitted that there was a special authority given them by the company to cancel the policy, it is not necessary to determine that question. The facts in this case show that the notice and tender of premium, if any was given and made, was not given or made in person by Adam Gray & Co., but by one Elliott; and it is claimed by the plaintiff that although Adam Gray & Co. had the power of cancellation, that Elliot possessed no such power; that it was a power which could not be delegated by Adam Gray & Co. to Elliot. The general proposition that such power could not be delegated is certainly true. *Delegatus non potest delegare.* If, therefore, you find that Adam Gray & Co. had attempted to delegate this power to Elliott, and, acting under that authority, he had attempted himself to cancel the policy by virtue of such authority, it would not amount to a cancellation of the policy.

If, however, Adam Gray & Co., acting under their authority from the company, and for the company, prepared the notice of cancellation as their act for the company, or the act of the company through them, and provided the money to be paid by them for the company, it was not necessary that they should in person have delivered to the plaintiff the notice, and paid or tendered to him the money. They could have these things done by Elliot. "Such service would not be of such a personal character as to come under the maxim," *delegatus non potest delegare.* May on Insurance, 154. Such delivery of notice and tender or payment of the money by Elliott would be a cancellation of the policy.