277. STARNES *et al. v.* ATLANTA POLICE RELIEF ASSOCIATION.

1. Where the constitution of a relief association provides that "no member shall be entitled to benefits who has not paid dues and assessments in advance," and that "any member whose dues remain unpaid for two months shall be dropped from the roll and lose all claim to membership," neither of these results will ipso facto amount to a forfeiture of the benefits. There must be some judicatory or affirmative action by the association, declaring the member suspended or expelled.
2. Where the secretary of the association has simply ·marked the defaulting member as "suspended," this *does not amount to affirmative action* of the association.
3. Where the association has entered upon its minutes an order declaring. a member dropped as "being two months in arrears with his dues to·the association," such order will be ineffective and inoperative unless at that time the dues of the member have remained unpaid for two months.
4. Where the son for some months paid to the proper officer of the association his father's membership dues, which were accepted by such officer, the actual bona fide tender thereafter by the son of his father's dues as such member to said officer, who declined positively to receive them, prevented a forfeiture of the membership for non-payment of dues; and where such tender has been made and so declined, the tender need not he repeated to prevent a forfeiture.
5. The word "family," used in the constitution of a benefit association to designate the class to which the beneficiaries must belong, includes any relative who lives with the member and who is dependent upon him, or with whom the member lives, and by whom he is supported and cared for at the time of his death. The majority of this court gives to the word "family" a broader definition than the one just indicated.
6. Courts should construe the constitution and by-laws of a relief association liberally to effect its benevolent purpose, and not so as to defeat such purpose.

Complaint, from city court of Atlanta—Judge Reid.    October 4, 1906.

Argued April 9,—Decided June 26, 1907.

*J. W. Moore, George Gordon, J. A. Branch,* for plaintiffs.

*James L. Mayson, William P. Hill,* for defendant.

HILL, C. J.    This was a suit by the plaintiffs in error, as the only heirs and members of the family of W. A. Starnes, against the Atlanta Police Relief Association.    At the conclusion of the evidence the court directed a verdict for the defendant; and to this judgment the plaintiffs except.    The following is a substantial statement of the evidence:    W. A. Starnes was a policeman of the City of Atlanta, and in 1898 became a member of the Atlanta Police Relief Association.    On October 16, 1904, he died.    It was admitted that from the date of his becoming a member until July 5, 1904, he continued to be a member in good standing in the association.    It was also admitted that the plaintiffs were his only children at the date of his death, and that his wife had died in the month of June, 1904, and that the relief association had paid to him in the early part of October, 1904, the benefit to which he was entitled by reason of his wife's death.    There was a conflict in the evidence as to the payment of the dues for the months of July and August, 1904.    It was admitted by the secretary of the association, whose duty it was under the by-laws of the association to receive such dues, that he received the dues from the plaintiff, W. A. Starnes Jr., for the month of July, 1904, but that he soon thereafter returned them to Starnes, who voluntarily took them back.    The latter part of this statement was denied by Starnes. It was conceded that the son had been paying his father's dues for some months before his death, and the son testified that in August, when the monthly dues were to be paid, he tendered to the secretary the dues for that month; that after taking the dollar for that month, the secretary at that time gave back to him two dollars, being the dues for July and August, telling him that they preferred to drop his father from membership, because of his immoral conduct; that the secretary handed the money to him before he made this statement, and he at once tendered it back, denying his right to receive it, or the secretary's right to return it, but that the secretary refused to take it back.    The witnesses for the associa-

tion testified that Dr. Starnes, the son, agreed to take back the dues, and asked that his father be dropped for non-payment of dues, and not for immoral conduct. This was denied by Dr. Starnes. No dues were paid or tendered for September or October, 1904, because, as Dr. Starnes testified, the secretary had notified him that he would not receive any if tendered.

The minutes of the association showed that W. A. Starnes had been dropped from the roll of membership, August 11, 1904, because "two months in arrears with his dues to the association."

Article 4 of the constitution of the association was introduced in evidence. The part thereof pertinent to the subject of dues is as follows: "Sec. 1. Each member shall pay to the secretary one dollar dues each month in advance. Sec. 2. All dues and assessments shall be paid to the secretary by the fifth day of each month. No member shall be entitled to benefits who has not paid dues and assessments in advance. Sec. 3. Any member whose dues remain unpaid for two months shall be dropped from the roll and lose all claim to membership." The evidence was undisputed that W. A. Starnes and wife, during his membership in the association, had lived with their daughter, Mrs. Crist, for six years prior to his death; that he went to Alabama to do some work, and, after an absence of several months, returned to Atlanta and went to live with his son, Dr. Starnes, where he was supported and cared for by said son for about one month when he died at his son's house. Article 5, of the constitution, section 1, was as follows: "On the death of any member the sum of one thousand dollars shall be paid to his family, each member to be assessed two dollars and fifty cents." It was admitted that the only members of the family of W. A. Starnes at the date of his death were the plaintiffs, his three children, all of whom were of age, married, and living separate from their father and not dependent on him; but as stated, at the date of his death he was living with his son, W. A. Starnes Jr., one of the plaintiffs, and at that time, as claimed, was dependent upon said son. It was insisted by the defendant, in support of the motion to direct a verdict, that, under this evidence, no legal verdict for the plaintiffs could have been found, (1) because W. A. Starnes was not a member of the association at the time of his death, as the evidence showed that he had been dropped by formal action of the association August 11, 1904, being two months

in arrears with his dues to the association; (2) because at the time of his death he had not paid all dues and assessments in advance, and was therefore not entitled to benefits; (3) because, from the undisputed evidence, the plaintiffs did not constitute the "family" of the member, within the meaning of that term in the constitution.

Under the Civil Code, §5331, the court may direct a verdict, where there is no conflict in the evidence, and that introduced, with all reasonable deductions and inferences therefrom, demands the verdict as directed. There was decided conflict in the evidence on the question of the payment of dues. To support the direction of a verdict, we must assume that the testimony of Dr. Starnes was true but was legally immaterial. It was admitted that Dr. Starnes paid the dues to the secretary June 5, thus continuing the membership of his father until July 5. On August 6 the secretary marked Starnes "suspended," and on August 11 thereafter the association dropped him from membership as "being two months in arrears with his dues to the association." But this action of the association was unauthorized by the constitution. The language is, "Any member whose dues *remain unpaid for two months* shall be dropped from the roll and lose all claim to membership." His dues were admittedly paid up to July 5, 1904. The association could not drop him from membership for non-payment until the dues had remained unpaid for two months; which would not have been the case until September 5, 1904. A member can not be dropped immediately upon failure to pay dues. A definite time of default is fixed. The dues must become due and "remain unpaid for two months" before such action can be taken. This is the plain, unequivocal construction to be placed on these words. If the construction was doubtful, we would give to it the construction which would prevent a forfeiture. In *Warwick* v. *Knights of Dæmon,* 107 *Ga.* 115, 32 S. E. 951, the Supreme Court expresses only the universal and controlling rule, in holding that "Forfeitures are not favored in the law, and in order to work a forfeiture of the rights of membership in a mutual association, it must clearly appear that such was the meaning of the contract, and the facts upon which a forfeiture is claimed must be proved by the most satisfactory evidence." The court, in applying this doctrine to an association closely analogous to the one now under

consideration, declares, "When the rights of members or their beneficiaries are involved, by-laws declaring a forfeiture are to be construed strictly if their validity is called in question, and liberally if it is sought to bring such claimants within their provisions, so as to prevent a forfeiture in either case."

But apart from the order of the association expelling Starnes, dated August 11, 1904, it is insisted that plaintiffs can not recover under section 2 of article 4 of the constitution, which in express words provides that "no member shall be entitled to benefits who has not paid dues and assessments in advance." We think, under the facts of this case as shown by the plaintiffs, there was never a legal "suspension" of Starnes because he had not paid "dues and assessments · in advance." The plaintiff's evidence showed a payment of the dues for July and August, although returned after payment in the manner described, and gave as a reason for not tendering the dues for September and October the positive declaration of the secretary that he would not accept them if tendered. If this testimony was true, all dues had been paid in law at the date of Starnes' death, October 16, 1904, and he was at that time a member in good standing. "Even where the rules of the association indicate that such non-payment of a monthly assessment by a member is a ground of suspension, a forfeiture of his benefits under the certificate will not result from such non-payment, unless there has been some judicatory or affirmative action by the association, declaring the member suspended." *Warwick* v. *Knights of Damon,* supra. It can not be reasonably claimed that the act of the secretary, August 6, 1904, in marking Starnes "suspended," is sufficient "judicatory or affirmative action by the association." No action declaring a suspension for non-payment of dues or assessments was ever taken by the association. The only action of the association expelling the member because "his dues and assessments had remained unpaid for two months" was that of August 11, 1904, which the evidence shows was entirely ineffective, because in violation of the constitution and unwarranted by the facts. We conclude that the fact of membership at the time of death should have been left to be determined by the jury, and could not have been decided by the court as a matter of law.

2. The main question, however, upon which it is said the learned judge below based his judgment directing a verdict for the de-

fendant was the opinion entertained by him that the deceased, whatever might have been his status in reference to membership in the association, had no "family at the date of his death to take the benefit." The evidence showed that his wife had died a few months before, and all of his three children, the plaintiffs in the suit, had married and had families of their own, and were living in separate households from their father, and were not dependent upon him for support. Article 5, section 1, of the constitution of the association provides, "On the death of any member the sum of one thousand dollars shall be paid to his family, each member to be assessed two dollars and fifty cents." What is the meaning of the word "family," as here used? The word is most elastic and flexible, either broad or narrow, according to the subject-matter to which it applies. In its limited sense the word "family" signifies the father, mother, and children. In its ordinary acceptation it means all the relatives who descended from a common progenitor. In its very restricted sense it means, husband and wife; father, mother, and children; father and children; mother and children; or children forming the same household. Some general rules of construction have been laid down for our guidance when the word is used in contracts of insurance, by mutual insurance companies, benefit societies, and like associations. "Where, under the contract, certain classes of persons only may take the fund, a broad and liberal meaning should be given to the words in which the classes are specified." Niblack Benefit Societies (2d ed.), §175. "Where the word 'family' has been used to designate the class to which the beneficiaries must belong, the courts have not generally given it a strict construction, and relationship, either consanguineal or marital, has not always been insisted upon in order to bring one under this class." 3 Am. & Eng. Enc. L. (2d ed.) 963; Carmichael *v.* N. W. Mut. Ben. Asso., 51 Mich. 494, 16 N. W. 871.

When we come to consider the cases where the courts have construed the meaning of the term "family," we find, notwithstanding these general rules, great divergence of construction. Some courts, adopting the liberal construction, have held that the word "family" includes relatives by blood or marriage, even when not living in the same household with the member or dependent on him at the time of his death. In Tepper *v.* Royal Arcanum, 61 N. J.

Eq. 638, 41 Atl. 460, 88 Am. St. R. 449, the court holds that stepchildren living apart from the member and independent of him at the time of his death, who had been brought up in his household, could lawfully be designated as members of his "family," even after they had married and left his household. The court in that case construes the word "family," as used in the constitution and by-laws of benefit societies, as including members of the household who in the usual course of family development have separated themselves from membership in the family. In Faxon v. Grand Lodge, 87 Ill. App. 262, it was held that the stepmother of a member, who was not living with nor dependent upon the member at the time of his death, was a member of his family, under the meaning of that term as used in the constitution and by-laws of the lodge, she being the only surviving member of his family. For substantially similar rulings, see Lane v. Lane, 99 Tenn. 639, 42 S. W. 1058; Norwegians' Old People's Home Society v. Wilson, 176 Ill. 94, 52 N. E. 41; Hosmer v. Welch, 107 Mich. 470, 65 N. W. 280, 67 N. W. 504; Wilson v. Cochran, 31 Tex. 677, 98 Am. D. 553; Hofman v. Grand Lodge, 73 Mo. 47; Ferbrache v. Grand Lodge, 81 Mo. App. 268; Klotz v. Klotz (Ky.), 22 S. W. 551. Other courts following the view of Lord Kenyon in King v. Inhabitants of Darlington, 4 Term Rep. 800, have given to the word "family" a restricted meaning. "In common parlance," said Lord Kenyon, "the family consists of those who live under the same roof with the pater-familias; those who form (if I may use the expression) his fireside. But when they branch out and become the heads of new establishments, they cease to be a part of the father's family." Similar constructions of the word "family," when used in the charter or by-laws of benefit societies, will be found in the following cases: Elsey v. Odd Fellows Association, 142 Mass. 224, 7 N. E. 844; Tyker v. Odd Fellows Association, 145 Mass. 134, 13 N. E. 360; Rocco v. Green, 50 Tex. 483; Brower v. Supreme Lodge, 87 Mo. App. 614; Zimmerman v. Franke, 34 Kan. 650, 9 Pac. 747.

From a most careful study of conflicting authorities, I deduce the following as the sound rule of construction: Where the word "family" is used to designate the class who shall receive the benefit, any relative who is living with and dependent upon the member, or with whom the member is living and upon whom he is

dependent at the date of his death, is within the designated class and entitled to the benefit. This combines the family relation with the fact of dependence, both of which I think should exist in such cases. The construction of this word in the constitution of the association, insisted upon by the able attorney for the association as meaning wife and dependent minor children, or wife, or dependent minor children, is entirely too narrow and defeats the benevolent purpose of the association. There might be cases where the member's family consisted of adult children dependent upon him, or where the member himself was dependent upon adult children who took care of him and paid his dues. Surely in such cases it would be unreasonable to hold that the benefit failed because there was no one to take it. In our opinion the constitution and by-laws in these associations should be construed by the courts so as to effect their benevolent object, and not to defeat that object. There was some evidence in this case from which the jury could have inferred that the son had paid the dues of his father to the association for some months, and that at the date of the father's death he was living with and was being supported by the son. We think he was entitled to have these questions of fact determined by the jury, and that a direction of a verdict against him was erroneous.

*Judgment reversed.*

RUSSELL, J., and POWELL, J., specially concurring: With the result reached, and with most of what is said by the Chief Judge in the opinion filed by him, we fully concur; however, we think that the word "family" should be given an even broader meaning than he has given it. Upon the theory, well recognized by the courts in dealing with insurance and similar beneficial contracts, that a death benefit bought and paid for by a person in life should not fail upon his death for lack of a beneficiary competent to take, no hesitancy has been shown, in the construction of such contracts, in giving great elasticity to the meaning of words where necessary to do so in order to find a beneficiary. Such a rule of construction is desirable from the standpoints both of the insurer and of the insured. One of the chief objections hitherto made against fraternal insurance is that it does not offer freedom in the designation of beneficiaries, and that the member is liable to pay for insurance which can never be collected, by reason of some strict and technical construction of the limitations imposed as to who shall be a

beneficiary. The result of a course of judicial construction which liberally construes such contracts, so as to make it more certain that the benefits bought will reach some person or persons whom the member would really wish such benfits to reach, is, therefore, to give popularity to this form of insurance. In such contracts the word "family" has been most liberally extended, wherever necessary to effectuate the beneficial purpose. It is a word which must vary in meaning according to the conditions surrounding the member at the date of his death. From a review of the decisions, we deduce the following order of precedence which should ordinarily be observed in determining who are entitled to take under the words "family of the member," or similar designations: (1) Wife and unmarried children, minor or adult; or, if no unmarried children, (2) wife alone; or, if no wife, (3) unmarried children alone; or, if no wife and no unmarried children, (4) persons related by consanguinity or affinity, living with the member in the same household; or, if none of these, (5) any person related by consanguinity or affinity upon whom the member is dependent; or (6) any person related by consanguinity or affinity, dependent on and supported by the member; or, if none of these, (7) married children, irrespective of dependency; or, if none of these, (8) father, mother, brothers, and sisters, irrespective of active household connection, and irrespective of the question of dependence; and in some instances an even further extension may be made, if necessary, in order to find a beneficiary. The existence of the benefit connotes a contemplated beneficiary, and the law will find one if possible.