HOME INSURANCE COMPANY OF NEW YORK *v.* CHAT-
TAHOOCHEE LUMBER COMPANY.

1. Where a fire-insurance policy was issued for a term of one year, which contained provision for cancellation at the instance of the insured, and also at the instance of the insurer upon giving five days notice, in the absence of any statutory provision, a cancellation could only occur within the year in one of three ways, so as to furnish a defense in case of loss by fire: by the exercise of the right on the part of the insured, by the action of the insurer cancelling the policy upon five days notice, or by an agreed cancellation.

2. If negotiations were pending between an insurance company and a holder of a fire-insurance policy issued by it, for the purpose of cancelling such policy, but such negotiations had not been completed, so that the minds of the parties had not met and a cancellation had not become actually effective before the fire occurred, this would not furnish a defense to the company to a suit on the policy.

3. If a proposition for a cancellation by agreement was made by letter, and a reply by letter was relied on as an acceptance completing the agreement, such reply would take effect from the time when it was sent.

4. If it was not sent until after the fire occurred, an officer of the insured corporation would not then have implied authority to send it, and thereby destroy any right of indemnity which had accrued to the insured.

5. An agreement for an immediate cancellation without giving five days notice can be made, and this can be shown by acts and conduct as well as by direct words. The burden of showing a complete cancellation is on the party asserting it.

6. A verdict should not be directed except where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict.

7. Under the evidence in this case it was not error for the presiding judge to direct a verdict. (LUMPKIN, J., dissents.)

8. (Per LUMPKIN, J.) Taking into consideration the terms of the letter proposing a cancellation, the amount remitted as return premium, the endorsement of the check sent therefor and the deposit of it in bank to the general credit of the insured, the payment of it in due course, the retention of the money by the insured, and the entire conduct of the parties, and in view of the principle announced in the sixth headnote above, I think there was enough to have authorized the submission of the case to the jury, under proper instructions as to whether there was an agreed cancellation, rather than to have directed a verdict.

Argued March 3,—Decided August 17, 1906.

Action on insurance policy.    Before Judge Spence.    Decatur superior court.    May 11, 1905.

The Chattahoochee Lumber Company brought suit against the

Home Insurance Company of New York, to recover $20,000 upon a policy of insurance. It was issued by the defendant on January 17, 1903, for a term of one year, and covered certain property belonging to the plaintiff. It contained the following provision in regard to cancellation: "This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rates; except that when this policy is cancelled by this company by giving notice, it shall retain only the pro-rata premium." The vice-president of the company lived in Savannah, where it apparently had its office, and the president lived in the suburbs of the city. On February 19, 1903, Graves, the agent of the insurance company, wrote a letter dated at Bainbridge, addressed to the lumber company at Savannah, which contained the following: "I am to-day in receipt of your check for $1,410, the amount of the premiums on insurance policies recently issued to you on the Donalsonville sawmill property. I deeply regret to inform you, however, that I have this day received a visit from the traveling inspector for the Home Ins. Co., and he advises me that in the present condition the Donalsonville property is not acceptable as insurable property, as the hydrants are in bad repair and some of the hose is old and worn out; also that the slab-pit is not protected by a wall from the mill, and in times of high wind the property is in great danger from a general conflagration. This necessitates my asking you to return the policies for cancellation, which I sincerely regret. I trust, however, that in the near future the fire protection at this mill will be improved, and that you will again let me handle the line for you. I enclose you check for $1,292.50, the amount of the return premium due you. You see you have been insured against loss for a little more than a month, so that the companies are due one-twelfth of the premium. Assuring you that I regret very much that the companies have found it expedient to take this step, I remain," etc. This was received by the vice-president of the lumber company on the morning of February 21. He dictated to a stenographer, and signed during the same morning, a reply in the following terms: "Yours of the

19th, enclosing check for $1,292.50, received, requestting us to return policies; and we herewith enclose same, which is perfectly satisfactory with us.    We can not blame you or the insurance companies for not continuing the risk on the mill property in the condition it is in." The president knew of this reply, and approved it.

Two policies were held by the plaintiff, the one sued on, and another which it is not material to describe here. The vice-president delivered the check to the secretary and treasurer, who delivered the policies to the stenographer during the forenoon. The check was drawn on a bank in Bainbridge. It was payable to the order of the lumber company, and was endorsed by it and deposited in the bank, and the company was given credit for the amount. It was paid by the Bainbridge bank a few days later. About two o'clock of February 21, the property caught fire and burned until it was destroyed. A telegram was received by the lumber company about four o'clock p. m., informing it of the fire. The vice-president asked the secretary and treasurer for the policies. He testified that his purpose was to hold them if they had not been mailed. The secretary and treasurer replied that they had been mailed or sent off. The latter testified that he so stated because he had delivered the policies to the stenographer, who he supposed had sent them; that late in the afternoon he learned that they had not been mailed; that in passing through the stenographer's office he saw a large envelope, asked him if those were the policies, and was surprised to hear him say they were; that he (witness) tore open the envelope, obtained the name of the company, and handed the policies back to the stenographer, though he did not tell the latter not to mail them; that the vice-president did not know at that time that they had not been mailed, nor were they mailed after the fire with his knowledge; that it was a misunderstanding on the part of the witness that he allowed them to be mailed; and that he supposed that, having received the return premium, it did not make any difference. The stenographer testified that he mailed the letter and policies about 8:00 or 8:30 p. m. The defendant moved for a nonsuit, which was refused. Its counsel announced that it had no testimony to introduce. Thereupon the court directed a verdict for the plaintiff, and the defendant excepted.

*King, Spalding & Little,* for plaintiff in error.

*Donalson & Donalson* and *Adams & Adams,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

The policy of insurance was issued for the term of one year, and the fire occurred within that time. The company relies on the defense of cancellation before the fire. This could only occur in one of three ways: by the exercise of the right of cancellation by the insured (which is not claimed), by the action of the company under the clause in the policy which permitted it to cancel on five days notice (the only clause on the subject), or by an agreed cancellation taking effect before the loss. The letter asking that the policies be returned for cancellation was a proceeding under the provisions of the policy, or else a proceeding independent thereof. If this was an effort to exercise a right of cancellation under the policy, it carried with it the corresponding right on the part of the other side to five days notice before the insurance terminated, unless this was waived. It is true that, independently of the right of cancellation reserved in the policy, there may be an immediate cancellation by agreement, but such an agreement must be shown. In 2 Clement on Fire Insurance, 415, it is said: "If fire occurs before the expiration of the five days' notice of cancellation required, policy remains in force, though it may have been sent by mail to the agent for purpose of cancellation and procuring other insurance. There must be evidence of intention to consent to immediate cancellation." See also Wicks v. Scottish Union Ins. Co., 107 Wis. 606; Kirby v. Phœnix Ins. Co. 13 Lea (Tenn.), 340. In *Hollingsworth* v. *Germania Fire Ins. Co., 45 Ga. 294,* the attempted cancellation was under the policy. While the letter did not directly say that an immediate cancellation, outside of the right to cancel on five days notice, was proposed, it is contended that it does so by implication, and that immediate cancellation may be shown by acts and conduct as well as by words. In this connection it is urged that as no premium was retained by the company for the five days during which the notice would have run, the insurance was not intended to continue for that time. It will be observed, however, that the letter stated that the lumber company had been insured against loss for a little more than a month, but eleven months' premium was returned, indicating that, aside from the five days which would have run under a notice given in accordance with the policy, a nice calculation of premium for exact days was not made by the insurance company or its agent. It is fur-

ther insisted that when the check was indorsed and deposited to the credit of the lumber company, it became the property of the bank, and the money became that of the company; and that such a transaction would amount to the payment of a debt, if the check was given for that purpose. There is authority for this position, but this court appears not to have thought that such a deposit was the equivalent of payment in cash until the check itself was paid. *Charleston Railway Co.* v. *Pope, 122 Ga.* 580; Civil Code, § 3720. When it is paid, however, whether it relates back for certain purposes need not be discussed. See, on this subject, 22 Am. & Eng. Enc. L. (2d ed.) 573. Suppose that, instead of a check which was turned into cash, the company had forwarded the money directly, and it was in the hands of the insured at the time of the fire, but the policy and letter of the insured had not been mailed, what would then have been the status? If this letter from the agent of the insurance company was a proposition for a cancellation, "as the minds of the parties must have met to create a contract, so, too, they must meet as to its termination, unless the obligation is made to end in some other manner by the original agreement." Ostrander on Fire Ins. (2d ed.) § 17. If there was a proposition by letter to cancel or surrender for cancellation, and an acceptance by letter was relied on, it would take effect from the time when it was sent (Civil Code, § 3646); and this being after the fire, no officer of the company would then have implied authority to waive or relinquish any right of the company to indemnity, which had already accrued. 10 Cyc. 908. It is thus clear from the evidence, without controversy, that there was no cancellation completed by giving five days notice as provided in the policy. It is equally clear that, if the letter from the agent of the insurance company is to be considered as a proposition for a cancellation by agreement, independently of the right of cancellation given in the policy, in order to have become effective there must have been not only a proposition but an acceptance. If an acceptance by letter is relied on, it would take effect from the time when the letter was sent, and not before. If the answer were not sent until after the fire, it would not operate to make a complete cancellation before the fire. The only remaining question is whether there was sufficient evidence, in view of all the facts disclosed, to have made it proper to submit to the jury the question whether, aside from any accept-

ance by the letter which was not mailed till after the fire, the minds of the parties had met, and there had been both a proposition and an acceptance, so that a cancellation had been effectuated before the fire; or whether the presiding judge properly directed a verdict.

As to the principles above discussed we are all agreed; but in the concrete application of them to the facts of this case, we differ. The majority of the court are of the opinion that the letter from the agent of the insurance companies was on its face a proceeding, under the terms of the policy, to cancel on five days notice; that, five days not having elapsed, there was no complete cancellation before the fire; and that a verdict was properly directed. I am of opinion that the letter from the agent was ambiguous, and might have been intended as a proceeding under the policy or a proposition for an agreed cancellation, independently of the right to cancel on five days notice; that the letter from the insured, not having been sent till after the fire, was not alone sufficient to make an acceptance before the loss, but its terms may be considered as having an evidential value in determining how the parties considered the proposition; and that in the light of all the facts, as disclosed by the evidence, the case (while close) was rather one for submission to a jury than for the direction of a verdict. Thus the company in remitting the return premium did not retain any amount to cover the five days pending notice. While, as has been seen, this did not necessarily show a proposition for immediate cancellation, and may not have resulted from any intention to have such immediate cancellation, yet this is more properly a deduction of fact than a matter of law. The letter from the insurance agent did not in express terms give notice of cancellation after five days, but set out certain reasons why the company desired to cancel, and asked that the policy be returned for cancellation. As in the matter of the amount of premium returned, the inference to be drawn was rather for the jury than the court, as to whether a cancellation under the right given by the policy was sought, or whether it was a proposal, outside of the terms of the policy, for an immediate cancellation. The officer of the lumber company took the check, endorsed it, and deposited it in bank to the general credit of the company before the fire took place, and directed the stenographer to return the policies; the check of the company, or its agent, in the usual course

would be returned to it or the agent as paid; the lumber company never returned or offered to return to the insurance company the check or the money representing it. It may not have been bound to do so, and after the fire the crediting of the amount so received on the recovery may be a sufficient explanation; but what inference, if any, the jury would draw from this I can not say. The policies in fact were sent, though after the fire. Thus, under all the evidence, I am of the opinion that the case was not one in which a verdict could be directed. The exact questions for the jury are very narrow,—whether the proposition for cancellation was under the terms of the policy, or independent of and outside of them, and, if the latter, whether the minds of the parties met and there was a cancellation consummated before the fire, or only a cancellation considered or intended but not perfected.

However strong may be the testimony on one side, a verdict should not be directed except where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict. Questions of intention must necessarily be to a considerable extent dependent upon inferences from the facts proved. It has been said by a great jurist that juries are the chemists of the law; and the solution of these issues of fact and the drawing of inferences of fact, where there is evidence to authorize it, may well be dealt with by these chemists in the laboratory called the jury room. It is sometimes urged that, if the evidence be so weak on one side that the court would not permit a verdict in favor of such party to stand, he should direct a verdict at once, and save both the time and expense of a new trial. Such is the view entertained in some jurisdictions. But in this State, on a jury trial, questions of fact are for the decision of a jury and not that of the judge. If they decide against the weight of evidence, it is the duty of the judge to exercise a sound discretion in reference to the granting of a new trial. But there is a difference between granting a new trial, and thus permitting the jury to again pass upon the question, and laying hold upon the case in limine, and telling them how to find.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Lumpkin, J., dissenting.*