## HALL *et al.* v. ROYAL FRATERNAL UNION.

1. Where the meaning of a contract of insurance, by reason of inconsistent provisions therein, is ambiguous, that construction will be adopted which is most favorable to the insured.

2. Under the facts of this case, it was error to hold that the liability of the defendant to the beneficiaries under the benefit certificate was limited to the amount of one assessment actually realized for the benefit fund for the month in which the insured died, from the membership in the division to which she belonged.

Argued January 6,—Decided July 15, 1908.

Action upon insurance certificate. Before Judge Cann. Chatham superior court. February 12, 1907.

Mary F. Hall and J. R. Saussy as administrator of Emily S. Hall, deceased, brought suit against the Royal Fraternal Union, in Chatham superior court, to recover $1,500, and upon an agreed statement of facts the judge, by consent of all parties, decided the case. He rendered judgment for the defendant, and ordered that upon the payment into court of $75.82 admitted by the defendant to be due, and which had been tendered to the plaintiffs before the commencement of the suit, the defendant be discharged without costs. To this judgment the plaintiffs filed their bill of exceptions, and bring the case here for review. So much of the agreed statement of facts as is material to the decision of the

case, besides the facts stated in the opinion, is as follows: The
defendant, a fraternal beneficiary association incorporated under
the laws of Missouri, issued to one of its members, Mrs. Julia A.
Hall, a certificate under which Emily S. Hall and Mary F. Hall
were the beneficiaries. The benefit certificate provided that Julia
A. Hall, since deceased, was accepted as a beneficiary member of
the order and was entitled to all the rights and benefits of mem-
bership "according to the constitution and by-laws of this order,
and is entitled to participate in the benefit fund of the order while
in good standing, and during the time this certificate is maintained
in continuous force and effect, not exceeding the amount of $2,000,
which sum, as provided herein, and in the constitution and by-
laws of this order, shall be paid as follows." Under the head of
"First. Accident Benefit," it was provided that if certain accidents
should happen to the assured, "an amount not exceeding one half
of the said sum will be paid to the aforesaid member payable in
annuities of $125.00 per quarter." Under the head of "Second.
Accident Benefit," provision was made that in the event of certain
accidents, "an amount not exceeding one fourth of the said sum
shall be paid to the said member payable in annuities of $125.00
per quarter." Under the head of "Third. Old Age Benefit,"
provision was made that "one tenth of the face value of this certifi-
cate will be paid to the member if physically disabled on account
of old age; provided the member shall have attained the age of not
less than 70 years and this certificate shall have been maintained
in continuous force and effect for twenty years, and a like amount
shall be paid to said member each year until the full amount shall
be paid, provided that the accident benefits paid hereunder shall
be deducted from the old-age benefits." The provision in the event
of death, in the face of the certificate, was as follows: "Fourth.
Mortuary Benefit. Within ninety days after the receipt of satis-
factory proof of the death of said member, there shall be paid to
Emily S. and Mary F. Hall (daughters) if living, if not, then to
the heirs of the member, an amount not exceeding the principal
sum of this certificate, from which shall be deducted all accident
and old-age benefits paid thereunder, payable at the home office in
St. Louis, Mo., upon the surrender and cancellation of this certi-
ficate, under the terms of the following Clause A. Clause A, to
be paid in one sum. Clause B, to be paid (together with 5 per

cent. annual interest) in annuities of............dollars per quarter." The certificate further provided that it was issued and accepted subject to what was contained in the application, to the conditions and statements contained on the back of the certificate, and to the constitution and by-laws of the order, all of which are made a part of the contract. On the back of the certificate appeared in 6 pt. nonpareil Roman type, under the head of "Privileges and Requirements," among other things, the following: "It is also understood and agreed that the liability of the order to the said member or his beneficiary or beneficiaries, in case of his disability or death, shall not exceed the amount of one assessment actually realized for the benefit fund from the membership in this division for the month in which disability or death occurs, from which shall be deducted all accident and old-age benefits previously paid hereunder; and not to exceed the principal sum named in this certificate, from which shall be deducted all accident and old-age benefits previously paid hereunder." It was agreed that the amount of the assessment realized for the benefit fund from the membership in the division to which the assured belonged for the month in which she died was $575.82. In the constitution and by-laws were the following provisions: "The order shall have the authority to levy and collect such assessments in addition to the regular monthly assessments as may be necessary to provide for the payment of accrued benefits and expenses, notice of which shall be sent to each member by mail 15 days before the same shall become payable." "Benefit Fund. §175. The Benefit Fund shall consist of 25 per cent. of the first year's assessment, except the first one, and 75 per cent. of all assessments paid in by the member thereafter, and shall be for the exclusive benefit of the members of the order holding benefit certificates. The following items shall be paid from the benefit fund: 'All sick, accident, total, permanent and partial disability, old-age and death benefits." "If the benefit fund is not sufficient to pay all claims so approved in full, they shall be paid pro rata, and this shall be accepted in full satisfaction of their demands." It was further agreed that after the death of the assured the defendant paid to the plaintiffs $125 per quarter for four quarters, amounting to $500.00, and tendered $75.82 as the balance due under the certificate, which was refused by the plaintiffs. Another by-law pro-

vided: "The payment of death benefits to beneficiaries under all life certificates, in one sum, shall be, at the option of the supreme trustee, payable in annuities of $125 per quarter, until the sum under said certificate has been paid."

There was a circular issued by the defendant and submitted to the insured to obtain her application for membership in the order. The circular had on it, among other things, the following: "A fraternal order for men and women. Life protection from $500 to $2,000. . . Age 52, rate $1.95 per $1,000. . . To the Beneficiary.—At the member's death such balance of the amount named in the certificate as remains unpaid to the member will be paid to the member's beneficiary, or to the member's heirs if the beneficiary should not be then living, as the member may direct in his application, as follows: A. The full amount of the benefits will be paid in one sum; or B. Payable in annuities (with 5 per cent. annual interest) of $125 per quarter, unless the certificate is for less than $1,000; then only $62.50 will be paid per quarter."

No accident or old-age benefits had been paid, or were due, under the certificate. The amount paid by the assured was $3.90 per month, which was the assessment rate at her age on a certificate for $2,000. There was no by-law of the order which provided that only one assessment actually realized for the benefit fund from the membership in the division in which the member belonged, for the month in which the death of the member occurred, should be the basis of settlement of the amount stipulated for in the certificate.

*Saussy & Saussy,* for plaintiff.

*Osborne & Lawrence,* for defendant.

HOLDEN, J. (After stating the foregoing facts). The plaintiffs contended that the beneficiaries of the benefit certificate were entitled, upon the death of the insured, to $2,000. The defendant contended that the beneficiaries were only entitled to the amount of one assessment actually realized for the benefit fund from the membership in the division to which the assured belonged, for the month in which she died, which, according to the facts of the case, amounted to $575.82. A circular was introduced in evidence which had been issued by the defendant and submitted to the insured to obtain her application for insurance. This circular was not by the terms of the contract made a part thereof, but, having

been issued by the defendant and submitted to the insured to obtain her application, it should be considered to explain any ambiguities or inconsistencies in the language embraced in the contract. This circular stated the rate per $1,000 at age 52 to be $1.95, which was the age of the insured and the rate per $1,000 paid by her. The circular had in it these words, "Life protection, from $500 to $2,000," and "certificates will be issued . . in amount from $500 to $2,000." This would seem to indicate that the insurance issued by the defendant was not to be less than $500 nor more than $2,000; yet if the amount to be obtained by the plaintiffs was only the one assessment for the one month above referred to, it might be less than $500, as this assessment for the benefit fund from one membership in the division to which the assured belonged for just one month might realize a very small sum. This circular further stated that upon the death of the member the "full amount of the benefit will be paid in one sum, or be payable in annuities . . of $125 per quarter, unless the certificate is less than $1,000; then only $62.50 will be paid per quarter." This language would not necessarily mean, but would seem to indicate, that the quarterly payments should amount to not less than $125 when the certificate was for $1,000 or more, and not less than $62.50 per quarter when the certificate was for less than $1,000. But if the amount due the beneficiaries was only the one assessment above referred to, during the month of the death of the insured, the whole amount payable under the certificate might amount to less than either of the quarterly instalments provided for. The circular further states that "at the member's death such balance of the amount named in the certificate as remains unpaid to the member will be paid to the member's beneficiary." There was only one amount named in the certificate, and that was $2,000, and the amount referred to in the circular must be this amount, the balance of which, according to the circular, as remained unpaid to the member would be paid to the member's beneficiary.

One of the by-laws of the defendant, which by the terms of the benefit certificate was made a part thereof, provided: "The payment of death benefits to beneficiaries under all life certificates, in one sum, shall be, at the option of the Supreme Trustee, payable in annuities of $125 per quarter until the sum under said certificate has been paid." This by-law provided that $125 per quarter

was to be paid "until the sum under the certificate had been paid," which is an unequivocal statement, if quarterly payments were made, that payments under the certificate should be in sums of $125 per quarter until the whole sum was paid, and would indicate that the amount to be paid under the certificate, upon the death of the insured, should not be less than $125. But if, as contended by counsel for defendant, the amount to be paid upon the death of the insured was only the amount of the one assessment above referred to during the month of her death, it might be less than $125.

The provisions of the benefit certificate made the conditions and statements contained on the back of the certificate a part thereof. One of these statements is as follows: "It is also understood and agreed that the liability of the order to the said member or his beneficiary in case of his disability or death, shall not exceed the amount of one assessment actually realized for the benefit fund from the membership in this division for the month in which the disability or death occurs, from which shall be deducted all accident and old-age benefits previously paid hereunder; and not to exceed the principal sum named in this certificate, from which shall be deducted all accident and old-age benefits previously paid hereunder." The word "disability" in the above statement would cover any disability from accident and any disability from old age; in fact, under the old-age benefit provision, the statement appears that the member is to be paid for "physical disability on account of old age." Hence, it will be seen that if this statement in fine type on the back of the certificate is to be enforced, it will have to be enforced in determining any amount that might be due under the accident or old-age benefit, as well as under death benefits; yet it is provided under the head of "First. Accident Benefit" that if certain accidents should happen to the insured, an amount not exceeding one half of said sum will be paid to the aforesaid member, payable in annuities of $125 per quarter; and under the head of "Second. Accident Benefit," the same provision is made, with the exception that the amount to be paid is an amount not exceeding one fourth instead of one half. But how can these provisions in the benefit certificate, providing that a certain per cent. of the $2,000 shall be payable in annuities of $125 per quarter, have any meaning if the limitation on the back of the certificate

is to be enforced, providing that the member could not receive an amount exceeding one assessment during the month in which the disability occurred, when this assessment might amount to less than $125, although the defendant in the benefit certificate agreed to pay $125 every quarter? The benefit certificate provided that the insured was entitled to participate in the benefit fund "not exceeding the amount of $2,000, which sum as provided herein and in the constitution and by-laws of this order shall be paid as follows." The certificate then proceeds, as set forth in the statement of facts, to show how it shall be paid; but nothing in this part of the certificate refers to the statement on the back thereof. It says that the beneficiary is entitled to participate in the benefit fund not exceeding the amount of $2,000, "which sum, as provided herein and in the constitution and by-laws of this order, shall be paid as follows." What amount is meant by the words "which sum"? Only one sum is mentioned, and that is $2,000. No reference whatever is here made to the statement on the back of the certificate, but the provision is, "which sum, as provided herein and in the constitution and by-laws of this order, shall be paid as follows." It is true that later on the statement on the back of the certificate is made a part of the benefit certificate, but this is in fine type, under the head of "Privileges and Requirements," where many matters are set forth, and this important provision is not found under a separate paragraph, but is put in between other matters entirely foreign to it. Such a restriction or limitation would not be expected to be found under the head of "Privileges" or "Requirements." If the meaning of the other provisions of the contract was that upon the death of the assured her beneficiaries would receive the amount of $2,000, less the unpaid assessments hereinafter referred to, this important provision limiting the liability of the order to one assessment, being in conflict with such provisions, should not prevent the beneficiaries from having such amount.

The constitution and by-laws provided that the defendant should have authority to levy and collect such assessments, in addition to the regular monthly assessments, as might be necessary for the payment of accrued benefits. Why was such power given, if it was the contract that a beneficiary under the certificate should not receive more than one month's assessments, which were fixed and

needed no levy upon the part of the defendant, as no benefits could accrue if discharged by the assessments as collected during a particular month? Especially is the inquiry pertinent as to why this power was given, if it was the contract that the beneficiary under the certificate should not receive more than one month's assessment, in view of the provision in the constitution and by-laws, "If the benefit fund is not sufficient to pay all claims so approved, they shall be paid pro rata, and this shall be accepted in full satisfaction of their demand." Another provision of the constitution and by-laws is, "§175. The benefit fund shall consist of twenty-five per cent. of the first year's assessments, except the first one, and seventy-five per cent. of all the assessments paid in by the members thereafter, and shall be 'for the exclusive benefit of the members of the order holding benefit certificates." Why should twenty-five per cent. of the first year's assessments, except the first one, and seventy-five per cent. of all other assessments be collected and put aside as a benefit fund, if the beneficiaries under the certificate could only collect one month's assessment? There may be months in which no disability or death occurs; then what is to become of this benefit fund accumulated in this way? It is not and can not be used for any purpose except to pay benefits and "expenses incurred in investigating, disbursing, and defending this fund from alleged and excessive fraudulent claims," because, under the express provision of the constitution and by-laws, the remaining per cent. of the assessment goes to the general fund and to pay the expenses of the company. If this benefit thus accumulated should not go to pay the full amount referred to in the certificates, could the insured, or the beneficiaries, under the certificates of the order, apply to the courts and have this fund distributed in some way, because under the constitution and by-laws it was accumulated for the one purpose only and could be used for that purpose only, namely, for the "exclusive benefit of the members of the order holding benefit certificates"? But certainly it was not contemplated by the company that this benefit fund accumulated in this way should be held until some person holding a benefit certificate should ask for a division of it among those holding benefit certificates. There does not appear to be any by-law, or any provision of the constitution, saying that this could be done, or in what manner it could be done, but the plain provision of the

constitution and the by-laws is that this benefit fund shall be for the "exclusive benefit" of the members. But it would seem that the intention of the company as to the disposition of this benefit fund was made plain by the following statement appearing at the end of §175, from which we have above quoted, "The following items shall be paid from the benefit fund: all sick, accident, total, permanent and partial disability, old-age and death benefits." The first part of this section simply says that this fund shall be for the "exclusive benefit" of the members, but the last part says in what way it shall be for their exclusive benefit, to wit, that *all* these benefits shall be paid from this fund. If the benefits are to be paid from this whole fund and not simply one month's assessment, then would the members have no further interest in it? If the benefits are not to be paid from this whole fund, but simply from one month's assessment, under the provisions of §175 would this fund still be for the "exclusive benefit of the members of the order holding benefit certificates"? The beneficiaries, upon the death of the assured, have to surrender and cancel the certificate before they are paid. Another provision in the constitution and by-laws is, "If the benefit fund is not sufficient to pay all claims so approved in full, they shall be paid pro rata, and this shall be accepted in full satisfaction of their demands." If the limitation on the back of the certificate is to govern, it might happen that during one month a number of disabilities and deaths might occur from which a number of benefits might accrue, and in the distribution of the assessment or benefit fund arising during that month each beneficiary would receive but a very small amount; whereas during many succeeding months there might be no deaths or disabilities, and the order accumulate a large sum arising from these monthly assessments, with no provision whatever for its disposition.

The following appears in the agreed statement of facts: "That the following is a correct copy of a by-law of said fraternal union which was passed prior to the issuing of said certificate. . . Life certificates are issued subject to the payment of at least two hundred and forty assessments. If the death of a member holding a life certificate occurs before he has paid two hundred and forty assessments, the remaining unpaid assessments shall be deducted from the amount payable to the beneficiary. The payments of death benefits to beneficiaries, under all life certificates, in one

sum, shall be, at the option of the Supreme Trustee, payable in annuities of $125 per quarter until the sum under said certificate has been paid." Unless the assessment for the month in which the member died from the class to which such member belonged amounted to a large sum, nothing would ever be due to the beneficiaries under a life certificate. Where a member died in the early years of the certificate, when only a few of the 240 assessments had been paid, the remaining assessments to be deducted under the above by-law, which was a part of the contract, the amount so deducted would amount to more than the amount going to the beneficiaries from the assessment during the month in which the assured died. In such instances, what is to become of the "Benefit Fund" accruing from assessments of the members of the class to which the assured belonged during the month of her death? The beneficiaries could not get it under the above quoted by-law, because the unpaid assessments would consume it. If the benefit fund arising during the month of the death of the insured in this case, from the class to which she belonged, is a sample of what is usually realized during other months of the order's existence, a member would have to live a long time and pay numerous assessments before the benefit fund during the month of the member's death would amount to more than the remaining unpaid assessments; and if she did so live, she would have to pay into the fund, through the medium of such assessments, more than the benefit fund realized would amount to. Life insurance is usually taken for the purpose of affording protection against the financial loss occasioned by the death of the insured, and it is at least commonly supposed that the estate of one dying after payment of only a few premiums is increased by the insurance to secure which they were paid. But this could not be true in the present case, if the limitation on the back of the certificate and the by-law providing for the deduction of unpaid assessments are both effective. If both the limitation and the by-law are enforced, the member's contract must prove a losing one in any event, no matter when her death occurred, although the circular submitted to the insured "to obtain her application" has in it these words: "The best way to provide an estate for the family by an approved plan." Had she paid the 240 assessments at the time of her death, she would have paid the order $936, and her beneficiaries would only receive in return

$575.82. If she died at any earlier period, the assessments which she had paid, together with those remaining unpaid which the by-law requires must be deducted, would amount to the same sum of $936, leaving in any event the benefit obtainable ranging from little more than one half the amount paid by the member, as the cost of obtaining it, down to nothing, as in the present case had the order sought to deduct such assessments as remained unpaid by the member from the amount tendered by it to the beneficiaries as that realized from the assessment provided for in the limitation on the back of the certificate and as constituting the measure of its liability. If the order had sought to enforce both the limitation and the by-law, it would not be liable to the beneficiaries in any amount; but they could hardly afford to assert such a contention. The scheme seems to have been prepared to operate according to circumstances. If the assessment realized more than the unpaid dues required to complete the 240 instalments required by the by-law, the company could claim its right to deduct such unpaid assessments and pay the beneficiary the balance; on the other hand, if the assessment realized less than such unpaid dues, as in the case before us, it would pay what was so collected and make no claim for deduction on account of the by-law.

The certificate in this case was issued on March 26, 1901, and the assured died March 14, 1904. The monthly assessments of $3.90 paid by her for 3 years would amount to 36 assessments, aggregating $140.40. The remaining 204 assessments at $3.90, would amount to $795.60. The amount of the benefit fund going to the beneficiaries under this certificate, from the assessments for the month of the death of the insured, only amounted to $575.82. Hence the company, under this by-law, was due the beneficiary nothing, if the limitation on the back of the certificate is to govern the amount payable under the contract; but the company paid to the beneficiaries $500 in quarterly instalments and offered them still more. If the limitation on the back of the certificate was to govern the amount due the beneficiaries, why did the company pay the beneficiaries $125 per quarter for four quarters, when, under this by-law, after charging off the unpaid assessments from the amount due under the limitation on the back of the certificate, the company owed the beneficiaries nothing?

The chance for the beneficiaries to get anything upon the death

of the assured is still further diminished by the fact that any amount that might be due is to be diminished by any amounts previously paid under the accident and old-age benefits. What has just been said applies only to results following death of the assured; and it may be said that if the assured could not win under the certificate by dying, she has a chance under the old-age and accident benefits. Let us see. If the limitation on the back of the certificate prevails, it applies, as before shown, to -disabilities arising from old age. Under the provision for old-age benefit, the insured can get nothing until she has "attained the age of not less than 70 years and this certificate shall have been maintained in continuous force and effect for 20 years." So she could get nothing under the old-age benefit until she had paid monthly assessments of $3.90 per month for 20 years. This would be 240 assessments, amounting to $936, which sum she would have to pay before she could realize anything from the old-age benefit. The one assessment for the month in which the assured died amounted to $575.82. If she had become disabled from old age during this month, the assessment would have been the same; and if the limitation on the back of the certificate is to govern, the amount due the insured would be $575.82, but she would not be entitled to this until she had paid 240 assessments, amounting to $936. The circular submitted to the insured "to obtain her application" has in it these words: "The best way to provide an estate for the family—by an approved plan—including accident and old-age disability benefits," but under this "best way" and "approved plan" the defendant would not be liable for the amount due under the old-age benefit of $575.82 until the insured had paid the defendant $936. Part of this amount, too, would be used by the defendant during this long period of 20 years. But it is provided under the old-age benefit that "one tenth of the face value of this certificate will be paid the member if physically disabled on account of old age, . . and a like amount shall. be paid to said member each year until the full amount shall be paid." What is meant by these significant words, "face value of this certificate" and the "full amount"? Do they mean $2,000, or one assessment during the month of the member's death? The limitation on the back of the certificate provided that the liability of defendant in case of disability or death should "not exceed" the amount of one

assessment. Under this limitation, the old-age liability could "not exceed" the amount of one assessment, even though paid along during each of the years coming after the disability of old age arrived; and as it says it shall "not exceed" this one assessment, it might be less. If the words "face value of this certificate" mean the one assessment during month of disability, which would be $575.85, then, when disability from old age occurred, defendant would pay insured only one tenth of this amount, which would be $57.58, and would pay $57.58 every year the insured lived after this disability occurred. This disability under the contract can not occur until the assured reaches the age of 70 years and has paid assessments for 20 years, which would make the insured over 70, if the certificate was taken out when she was past 50. If she is so fortunate as to live to be 70 and pay assessments for 20 years, she would not, after a physical disability from old age occurred, likely live many more years and would receive only $57.58 per year, which would stop at her death and stop at the end of 10 years, even if she lived that long. She would have to live 10 years after the disability from old age occurred, to get the $575.82, after having paid assessments for 20 years, amounting to $936. But she would get nothing as an old-age benefit unless she was "physically disabled on account of old age." This, in all probability, would never happen; and if it did, she could hardly hope, in the face of both old age and physical disability, to live the ten years necessary in order to receive the full $575.82 payable in instalments of one tenth each year. But while receiving this $57.58 each year she would still have to pay her assessments each month of $3.90 amounting to $46.80 per year, leaving a balance of only $10.78 per year. Besides, the company would only pay her once a year but would have the use of her monthly payments. If physical disability on account of old age ever occurred, and she were to get one tenth of $2,000 every year, she could hope to receive but little of the amount of $936 paid out by her to the company during the previous 20 years. If she would get one tenth of $2,000 every year, she could only get in all the amount of one assessment during the month of disability, if the limitation on the back of the certificate is to govern. It would hardly seem probable that the words "face value of this certificate" meant the one assessment for one

month. It meant that the face value was $2,000, in view of all the provisions of the contract.

Under the head of "Accident Benefits," it is provided that the member shall receive "an amount not exceeding one half of the said sum," if he should, from violent, external, and accidental causes, within ninety days after the accident, lose the sight of *both* eyes permanently, or at or above the wrist or ankle one hand *and* one foot, or "an amount not exceeding one fourth of said sum," if he should, from the same causes and within the same time, lose one hand or foot at or above the wrist or ankle. Accidents for which benefits were to be paid were limited to those named above. According to the above provisions, the member was to receive a certain part of the $2,000 in the event of the happening of one of the accidents named. But the limitation on the back of the certificate says that the amount to be paid any member or beneficiary shall not exceed one particular month's assessment as a disability benefit for either one of the accidents provided for in the certificate. If one of these accidents occurred, the portion of the $2,000 provided for could not exceed this one month's assessment, and the member could not receive more than the amount realized therefrom if the limitation on the back of the certificate is controlling. If the liability for accident benefit is determined by the provision in the face of the certificate, it would be less than the one month's assessment if such assessment realized more than the portion of $2,000 provided for in the event of such accident as occurred, because this limitation does not provide for one month's assessment, but simply for an amount not exceeding one month's assessment. This one month's assessment would, at the option of the order, be payable in quarterly instalments, and while thus being paid in instalments the member would continue to pay monthly dues of $3.90. One half of $2,000 was to be paid in the event of the loss of *both* eyes, or loss of one hand *and* one foot, and one fourth in the event of the loss of one hand *or* one foot. The happening of one of the accidents provided for in the certificate was about the only contingency by which the company could incur a liability which would necessitate the payment of a greater amount to the member, or her beneficiary, than the company contracted to receive from the member in payment of assessments; and fearing that these rather improbable events might occur, the

company provided this limitation that the amount to be paid for any disability should not exceed the one month's assessment. If the assessment realized was not in excess of $500, the member would receive the same amount for the loss of one hand or one foot as she would for the loss of *both* eyes, or one hand *and* one foot, if this limitation is effective. How can the definite and positive promise to pay a given portion of $2,000 be reconciled with the provision in the limitation on the back of the certificate; that, in the event of any disability, the company shall not be liable for an amount exceeding the sum realized from assessments for a particular month, which must of necessity be an indeterminate amount? The limitation on the back of the certificate was not authorized by the constitution or any of the by-laws, and was inconsistent with them and with the terms of the body of the certificate.

The defendant was liable for three kinds of benefits, stated in the certificate, all of which were not to exceed $2,000; but neither the constitution and by-laws, nor the certificate in its body, anywhere intimate that the total liability shall be less than $2,000 in case of death of the assured.

The application of the insured states, "I hereby make application for membership . . for a beneficiary certificate No. 1 A, for $2,000." This application, accepted by the company, was by its terms made a part of the benefit certificate issued thereon. The application was made a part of the certificate for all purposes, and the application expressly states that it was made for a certificate named for $2,000, and not for "an amount not exceeding $2,000," or any sum less than $2,000. Then how can it be said that the certificate was for less than that amount, when the application, approved by the defendant, and made a part of the certificate; states that it was for that fixed sum? The certificate on its inside does not state that the amount is to depend on the event that one assessment during the month of the death of the assured from the membership of the division to which the assured belongs aggregated $2,000, but the certificate expressly states that the member is entitled to participate in the benefit fund of the order not exceeding $2,000. The defendant did not offer any evidence showing that the benefit fund from which, under by-law §175, the death benefits are to be paid, was insufficient to pay this accrued mortuary benefit. The defendant simply undertook to reduce its liability to

one assessment during one month, in accordance with the limitation on· the back of the certificate.

Whenever the provisions of a policy of insurance are' in conflict and are susceptible of two constructions, that construction will be given which is most favorable to the insured. See *Mass. Benefit Life Assn.* v. *Robinson,* 104 *Ga.* 256 (30 S. E. 918),·and authorities cited in the opinion;·also Laker *v.* Royal Fraternal Union, 95 Mo. App. 353 (75 S. W. 705). In the Laker case above cited, there was involved a benefit certificate for $2,000, issued by the defendant in the case we are now considering. The contract in the Laker case was not exactly the same as that in the present case, but was very similar. In construing the contract in the Laker case, the Court of Appeals of Missouri, in the decision of the case, used the following language in the sixth headnote: "In the case at bar, by reading the certificate, the applicant would naturally conclude that his life was insured in the sum of two thousand dollars, for the benefit of his wife, and it should be given that construction, if from the language of the certificate and by-laws it is left in doubt whether or not such was the contract, and it is left in doubt whether the contract of insurance is for the payment of two thousand dollars, or a stipulated sum to the beneficiary on the death of the insured, to be drawn from the benefit and reserve funds, and if these prove inadequate, then the balance to be raised· by additional assessment, as authorized by section 108 of the by-laws, or whether a pro-rata distribution of the benefits and benefit reserve fund, as provided by section 183 of the by-laws, furnish the measure of the insurer's liability, or whether or not that liability can be discharged by the payment of the amount realized from one assessment for the month in which the member died,' or the members of the division to which he belonged, as provided by section 209 of the by-laws; held, that in this ambiguous condition ·of the contract as to the amount due on the certificate, that construction which is most favorable should be given the beneficiary, and it is held that she is entitled to the full amount of the insurance." This message from the Court of Appeals of the home of the defendant is applicable in considering the contract now before us.

We do not mean to say that the limitation on the back of the certificate is not inconsistent with the view herein expressed, bu·

other provisions of the contract embraced in the certificate, the application, and the by-laws and constitution, are utterly at variance with this limitation, and these conflicting provisions should prevail over the inconsistent restriction of liability contained in the limitation on the back of the certificate.

*Judgment reversed. All the Justices concur.*

ATKINSON, J., concurring specially. I concur in the result, but not in all of the reasoning in the opinion.