23833.   FARMERS MUTUAL FIRE INSURANCE COMPANY OF GEORGIA *v.* HARRIS.

76

*Duncan & Nunn,* for plaintiff in error.

*A. M. Anderson, Robert E. Brown,* contra.

GUERRY, J.   C. G. Harris filed suit against the Farmers Mutual Fire Insurance Company, of Georgia, on a certain policy issued by it on December 3, 1931, covering certain property described therein, which it was claimed was destroyed by fire on December 2, 1932. The petition made substantially the following case: The defendant company is a mutual fire-insurance company. No premiums are paid by the policy-holders but said company is operated by assessment of the members of the company of their proportionate part of the losses incurred by other members of the company. The plaintiff became a member of the Houston county division of the defendant company about 1918 or 1919, at which time he insured all his farm property located on two farms. On December 3, 1931, plaintiff entered into a written contract of fire-insurance (the contract sued upon) with the defendant company, insuring the property destroyed, together with other property of plaintiff, in the total sum of $2850, said property being located on a farm designated as the "Sistrunk Place." The property destroyed and described in the policy was a crib-house valued at $350, which contained farm implements and supplies and which was built by the plaintiff and located on the "Sistrunk Place," which property was leased by plaintiff, the lease expiring January 1, 1933. The petition further alleged a full compliance on the part of the plaintiff with the terms of the policy, payment of all assessments and lack of notification by the defendant of cancellation of the policy until a few days after the fire. By amendment to meet a special demurrer filed by the defendant, plaintiff attached to his petition a copy of the lease contract between him and Mrs. Wester of the property known as the "Sistrunk Place," upon which the farm crib and contents destroyed were located. Defendant filed its answer denying liability, and alleged: "Further answering said petition, defendant says that in the summer of 1932, several months

prior to the alleged fire loss of plaintiff, the Houston county division, by resolution of its board of directors, directed that all insurance risks of its members be reinspected, revalued and reapproved, and new and different policies be written. That the insurance of plaintiff, including the policy sued on, was cancelled and a new policy was written and delivered to plaintiff, in which none of the property claimed to have been lost by fire as alleged in the petition was included. That plaintiff had both oral and written notice that that insurance was cancelled and that none of the property embraced in the policy sued on would be included in the new policy issued to him. That plaintiff accepted the new policy with full knowledge that it embraced none of the property in the policy sued on; this acceptance of the new policy having been made by plaintiff several months prior to the alleged fire loss. That after the new policy was issued no assessments were ever levied or collected on the policy sued on, and plaintiff was fully aware at all times that he had no contract or policy of insurance with defendant on any of the properties claimed to have been lost by fire as alleged in the petition."

The evidence for the plaintiff shows the issuance of the policy sued upon on December 3, 1931, and the loss of the property by fire on December 2, 1932. The plaintiff denied that he ever received any notice of the meeting of the stockholders on June 8, 1932, and says that he had two policies of insurance issued to him, one on property situated on what was known as the "Hose Place" and the other on the "Sistrunk Place," the place on which the loss occurred; that representatives of the company called on him some time in July, 1932; "they were appraising and rewriting all of the insurance." The buildings on the "Hose Place" were inspected by these agents. The plaintiff further testified: "I think the idea was to rewrite all the policies. I don't remember they told me they were rewriting all the insurance, but they said they were rewriting and reappraising the property. . . They delivered me a new policy for the 'Hose Place' some two or three months later." "I did not own the 'Sistrunk Place' and told them my lease was expiring and I did not know whether I would run it again another year or not." The plaintiff denied that the agents of the company informed him, when they came around revaluing the property on the "Hose Place," that the "Sistrunk Place" would be left off in

the rewriting of the insurance, and testified: "Mr. Ramage did not tell me in the presence of Mr. Smith that they would not continue the insurance. He says, 'Mr. Smith, Mr. Tucker, and myself appraised and rewrote this policy last December when we adjusted the other fire.' He did not say the company would not continue the insurance on it. . . He did not say he was going to accept it, . . but said . . he would go into that later." The defendant introduced a policy dated September 15, 1932, which insured only the property on the "Hose Place" and did not include the property destroyed by fire, December 3, 1932. The application for this insurance was signed by the plaintiff and dated on September 15. The application contained the following clause, written in as a part of the policy: "All previous policies cancelled." The plaintiff admitted the signing of such application, but denied that he had notice that such a clause was contained therein. The defendant also showed by evidence that at the time this application for insurance was mailed to plaintiff to be signed by him, sometime prior to September 15, 1932, there was also enclosed in the envelope containing the application, which was signed and returned to it by plaintiff, the following letter: "We enclose herewith new application covering property that you have insured in this company. Mr. A. B. Ramage and Mr. G. W. Smith have reinspected all property covered by this company and the enclosed schedule is the amount that your new policy will cover. The new policy will be issued as of date you sign the new application and all policies now outstanding will be cancelled. Please sign the enclosed application and mail at once to the company so that your new policy will not be delayed in reaching you. *Don't fail to sign and return at once.*" The defendant also contended that after the fire the plaintiff brought this application and policy to it and that it contained such a letter, and such letter was the one sent to all of its policyholders with reference to the cancellation and rewriting of all their policies. The plaintiff denied receiving such a letter and swore that he had never seen it before the trial. He stated: "I never had any letter with the policy I brought to Mr. Andrews, not a copy of the one above referred to. I don't remember, but I don't think a copy of the above letter was folded in the policy I brought to Mr. Andrews; I am quite sure it was not there or I would have read it." The defendant further showed that there was a meeting of the stock-

holders on June 8, 1932, and the passage of a resolution with reference to the revaluation and rewriting of all the insurance in said company. A committee was appointed who inspected and reported on all the policyholders and their property. These agents, composing the committee, testified that they told the plaintiff, when they went to see him, that in view of the fact that his lease was expiring on the "Sistrunk Place," they would leave off the property on this place, where the loss afterwards occurred; that after they had made an inspection they prepared the new policies in accord with the appraisement and inspection made and sent them out together with applications attached thereto. No policy is in effect until the application therefor has been signed by the insured.

■ The view that we entertain of some phases of the case makes it unnecessary to refer specifically to some of the grounds of the motion for a new trial. The defendant's main defense to the suit by the plaintiff on the insurance policy issued by it was that it had been duly cancelled before the alleged loss. We first direct our attention to this point. First, it appears that in September there was issued to the plaintiff a new policy, and that the application for it contained the following clause: "All previous policies cancelled," and the application was signed by the plaintiff. It appears that the plaintiff operated two farms, one known as the "Hose Place" and the other known as the "Sistrunk Place," which last-mentioned place he leased from a third person, this being the place upon which the loss occurred. Two separate policies in the defendant company had theretofore covered the property on each farm. It appears that in the summer of 1932 there was a meeting of the stockholders in the defendant company and that a resolution was passed that all policies then existing in the company should be rewritten. Defendant's agents visited the plaintiff for this purpose and did reinspect and revalue the property on the "Hose Place," but plaintiff testified that they said that they would not bother with the "Sistrunk Place" at that time, because that policy had just been rewritten. The application and policy above referred to as received and signed by plaintiff covered only the property on the "Hose Place," and did not contain any of the property contained in the policy sued on which was situated on the "Sistrunk Place" and insured in another policy. We are of the opinion that under the facts of this case, the clause above cited, which was con-

tained in the application can not be held to have had the effect of cancelling the policy sued upon. While it is true that courts are not at liberty to arbitrarily disregard provisions contained in contracts of insurance *(Clay* v. *Phoenix Insurance Co.,* 97 *Ga.* 52, 25 S. E. 417), or to construe them otherwise than as literally expressed *(Cherokee Brick Co.* v. *Ocean Accident & Guaranty Corp.,* 21 *Ga. App.* 702, 94 S. E. 1032), nothing is better settled in the law than that where contracts of insurance contain provisions which are ambiguous and may be logically construed in two or more different ways, that construction will be adopted which will uphold the contract in favor of the insured. "No rule in the interpretation of a policy is more fully established, or more controlling and imperative, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat without plain necessity his claim to indemnity, which, in making the insurance contract, it was his object to secure." May on Insurance, 192, cited approvingly in *McEachern* v. *N. Y. L. Ins. Co.,* 15 *Ga. App.* 222 (82 S. E. 820). "If a policy of insurance is so drawn as to require interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured. . . Policies of insurance will be liberally construed in favor of the object to be accomplished, and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts." *Johnson* v. *Mut. Life Ins. Co.,* 154 *Ga.* 653 (115 S. E. 14). It was said in *Insurance Co.* v. *DeLoach,* 3 *Ga. App.* 807 (61 S. E. 406) : "If we should concede that the words indorsed on the policy, '$500 additional concurrent insurance permitted,' were susceptible of two constructions, the one, that the agent, not knowing the amount of the outstanding insurance, was attempting to guard against an excessive amount, so that the amount given should relate to that already in force; and the other, that it related to the insurance to be taken in addition to that outstanding at the time the policy was written, including that then being written, the court would be compelled to adopt the latter construction; for the provisions of a policy are to be more strongly construed against the insurer." See also in support of this principle the following cases : *Massachusetts Benefit Life Asso.* v. *Robinson,* 104 *Ga.* 256 (30 S. E. 918, 42 L. R. A. 261) ; *Warwick* v. *Supreme Conclave Knights of Damon,* 107 *Ga.* 115

(32 S. E. 951); *Hall* v. *Royal Fraternal Union*, 130 *Ga.* 820 (61 S. E. 977); *Globe & Rutgers Fire Insur. Co.* v. *Walker*, 150 *Ga.* 163 (103 S. E. 407); *Columbia Cas. Co.* v. *Rogers Co.*, 157 *Ga.* 158 (121 S. E. 224); *New Jersey Insurance Co.* v. *Rowell*, 157 *Ga.* 360 (121 S. E. 414); *Ætna Life Insurance Co.* v. *Palmer*, 159 *Ga.* 371 (125 S. E. 829); *Penn Mut. Life Ins. Co.* v. *Milton*, 160 *Ga.* 168 (127 S. E. 140, 40 A. L. R. 1382); *Goldman* v. *Ætna Insur. Co.*, 162 *Ga.* 313 (133 S. E. 741); *Arnold* v. *Empire Mutual Annuity and Life Ins. Co.*, 3 *Ga. App.* 685 (60 S. E. 470); *Mutual Life Ins. Co.* v. *Durden*, 9 *Ga. App.* 797 (72 S. E. 295); *Perkins* v. *Empire Life Insurance Co.*, 17 *Ga. App.* 658 (87 S. E. 1094); *Pacific Mut. Life Ins. Co.* v. *Meldrim*, 24 *Ga. App.* 487 (101 S. E. 305); *Liverpool & London & Globe Ins. Co.* v. *Ga. Auto & Supply Co.*, 29 *Ga. App.* 334 (115 S. E. 138); *Insurance Co. of North America* v. *Samuels*, 31 *Ga. App.* 258 (120 S. E. 444); *Eisenberg* v. *Hebrah Gemiluth Hesed Soc.*, 33 *Ga. App.* 350 (126 S. E. 265); *Macon County Asso. of the Farmers Mut. Fire Ins. Co. of Ga.* v. *Slappey*, 35 *Ga. App.* 737 (134 S. E. 834); *Continental Life Ins. Co.* v. *Wells*, 38 *Ga. App.* 99 (142 S. E. 900); *Kesler* v. *Commercial Cas. Ins. Co.*, 39 *Ga. App.* 197 (146 S. E. 506). The clause written in the application (quoted above), which was signed by the plaintiff, may not only be construed to mean that *all* contracts of insurance written by the defendant, *of all kinds,* were to be cancelled, but may also, without violence, be construed to mean that all previous policies insuring the property contained in the new policy were cancelled. Under the principles already stated in this opinion, this court must adopt the construction holding that the policy rewriting and revaluing the property under a former contract insuring property contained on the "Hose Place" which contained such provision would not be construed to cancel the policy of insurance which insured property (none of which was contained in the new policy) on the "Sistrunk Place."

The defendant company further contends that the letter above quoted, which was mailed to the defendant with the application which he signed, was a sufficient notice of cancellation. The same may be said with reference to the letter as has been said above with reference to the clause written in the application for the new policy. The right to cancel a policy of insurance entered into by the insurance company can be exercised only because it is reserved in

82

the policy, and can only be exercised as therein provided. Commercial Union Fire Ins. Co. *v.* King, 108 Ark. 130 (156 S. W. 445); Davis Lumber Co. *v.* Hartford Ins. Co., 95 Wis. 226 (70 N. W. 84, 37 L. R. A. 131); American Fire Ins. Co. *v.* Brooks, 83 Md. 22 (34 Atl. 373); Artificial Ice Co. *v.* Reciprocal Exchg., 192 Iowa 1133 (184 N. W. 756); Van Valkenburgh *v.* Lenox Fire Ins. Co., 51 N. Y. 465; Bennett *v.* City Ins. Co., 115 Mass. 241; German Union Fire Ins. Co. *v.* Clark, 116 Md. 622 (82 Atl. 974, 39 L. R. A. (N. S.) 829, Ann. Cas. 1913D, 488); Reliance Life Ins. Co. *v.* Thayer, 84 Okla. 238 (203 Pac. 190); Continental Ins. Co. *v.* Parkes, 142 Ala. 650 (39 So. 204); Bradshaw Bros. *v.* Fire Ins. Co. of County of Phila., 89 Minn. 334 (94 N. W. 866). "The notice must be given to the insured, and it should state not merely an intent to cancel, if some condition be not complied with, but it must be an actual notice of cancellation within the meaning of the policy and so *unequivocal* (italics ours) in its form that the insured may not be left in doubt that his insurance will expire on the time limited by the terms of the policy, and that the company will not be liable for any loss after the expiration of that time." Commercial Union Fire Ins. Co. *v.* King, supra; Southern Ins. Co. *v.* Williams, 62 Ark. 386 (35 S. W. 1101); German Fire Ins. Co. *v.* Clark, supra; Lattan *v.* Royal Ins. Co., 45 N. J. L. 453; Clark *v.* Insurance Co. of North America, 89 Me. 26 (35 Atl. 1008, 35 L. R. A. 276); 26 C. J. 138. The letter was a form letter, sent to all policyholders. It did not refer to the policy covering the property on the "Sistrunk Place" and state unequivocally that it was the intention of the company to cancel that policy and that in accordance with the provisions of the policy providing for such cancellation it would expire after thirty days from the date of the letter. It only stated in vague terms that "We enclose herewith new application covering property that you have insured in this company . . and all policies outstanding will be cancelled." It is very logical to construe the language to mean that all policies covering any of the property contained in the new policy were to be cancelled. We are therefore of the opinion that the letter was insufficient as a notice to the insured of cancellation of the policy sued upon. Furthermore, the burden of proving a cancellation of a policy of insurance is upon the party asserting such cancellation. *Home Insurance Co.* v. *Chattahoochee Lumber Co.,* 126 *Ga.* 334

(55 S. E. 11). Where a policy of insurance is sued upon and the company defends upon the ground that under its right reserved in the policy it had cancelled the policy, the company *must affirmatively* show that the letter notifying the insured that the policy was cancelled was *received* by him. The question of whether the insured received the letter is a question for the jury. Commercial Union Fire Ins. Co. *v.* King, supra; Runkel *v.* Citizens Ins. Co., 6 Fed. 143; Farnum *v.* Phœnix Ins. Co., 83 Cal. 246 (23 Pac. 869, 17 Am. St. R. 233). The plaintiff testified that he did not receive and that the letter above referred to was not contained in the letter containing the application. When a policy of insurance provides for the cancellation of a policy by the insurance company, but does not provide the manner in which such notice must be given, before such cancellation becomes effective it must appear that the notice of the cancellation was received by the plaintiff. *Bankers Mut. Casualty Co.* v. *Peoples Bank of Talbotton,* 127 *Ga.* 326 (56 S. E. 429). The policy sued upon provided that "Either the insured or the company may, at any time, be released from the obligations of this policy by giving the other thirty days notice of such intention, but the insured and the company shall both be bound until noon of the thirtieth day after the date of such notice." While an agent of the defendant company did testify positively that he mailed a letter to the insured containing such letter, which letter was properly addressed, duly stamped, and deposited in the mail (*Bankers Mut. Casualty Co.* v. *Peoples Bank of Talbotton,* supra), "where notice is required to be given, it is generally held, in the absence of anything appearing to the contrary, that the notice is not complete until it is received; and that, while mailing a notice duly directed and stamped may furnish presumptive evidence of its receipt, it does not alone constitute notice." *Puryear* v. *Farmers Mut. Ins. Asso.,* 137 *Ga.* 579 (73 S. E. 851). Therefore, taking the evidence most favorably to the plaintiff, which the jury by their verdict have done, any charge of the court with reference to the sufficiency of the notice, would be harmless.

We are further of the opinion that under the provisions of the policy with reference to the right of cancellation by either party, notice of cancellation need not necessarily be in writing, that the trial judge properly left it to the jury, under all the facts and circumstances of the case, to say whether actual notice was conveyed

to the plaintiff by the defendant that the policy of insurance sued upon was to be cancelled.

The policy provides that the company shall not be released from any obligation in case of loss or damage because of defective titles to property, but even though the insured is not the rightful or legal owner of the property, then shall the insurance or such part of the same as may not belong to the insured be paid to the proper owner. The insured had an insurable interest, whether as a leaseholder or as a plain tenant. *Creech* v. *Richards,* 76 *Ga.* 36; *New Jersey Ins. Co.* v. *Rowell,* 157 *Ga.* 360 (121 S. E. 414). It is contended by the defendant that the loss of the building, insured for $350 and of that value at the time of the loss, may not be recovered by the plaintiff, but that his recovery is limited to the value of the use of his remaining leasehold interest. The question as to the amount of recovery in a case of this character has never been decided in Georgia, although it has been suggested in New Jersey Ins. Co. *v.* Rowell, supra, and *Ætna Ins. Co.* v. *Foster,* 43 *Ga. App.* 658 (159 S. E. 882). It has been held by some states that the lessee could only recover the value of the use of the property for the remainder of the term. See note in 68 A. L. R. 1344. On the other hand, there is authority to the effect that where the insured has an insurable interest he may recover the full value of the property, and especially is this true where the insurer has full knowledge of the extent of insured's interest. See 68 A. L. R. 1344, cited above; A. & E. Ann. Cases 1913E, 742n. The evidence discloses, without dispute, that the company knew of the character of the interest of the plaintiff when it issued the policy and had known of it for at least eleven years prior thereto. The policy itself expressly waives defects of title. The company knew of the insured's leasehold interest, which was an insurable interest. We are of the opinion, that the company may not, with full knowledge of the interest being insured, contract to insure and collect assessments on a named amount and then, in the event of loss, contend that insured's interest is limited to the value of the rental of the leasehold for the remainder of the term. A different case might be presented if the policy contained no such provisions and the insurer was ignorant of the character and extent of insured's interest in the property. In Simmons *v.* Home Insurance Co., 235 Ill. App. 344, it was said: "In an action by the lessee of buildings

on a policy of fire insurance insuring him against all direct loss and damage by fire, insured is entitled to recover the full amount of his loss and the court did not err in refusing to instruct the jury that he could only recover for the value of the use of the buildings during the unexpired term of the lease." In Home Ins. Co. of N. Y. v. Gibson, 72 Miss. 58 (17 So. 13), it was said: "An insurance company which with full knowledge of the facts issues to one having only a leasehold interest in a building a policy insuring the entire interest can not, in case of loss, limit the recovery of the insured to his interest. There being no fraud or mistake in procuring the insurance, the company is bound by its policy and has no concern with an outside contract between assured and his lessor as to their respective interests in the property." In 2 May on Insurance, § 424, it is said: "Where a building which stood on leased land was destroyed, and the lease expired within a few days, so that the building must be removed or forfeited, or a new lease entered into, it was held that the intrinsic value of the building was the amount recoverable, without reference to the special circumstances;" citing Laurent v. Chatham Fire Ins. Co., 1 Hall (N. Y. Superior Ct.), 41. "It may be said generally, that the insured, who at the time of loss and at the time of insurance has an insurable interest, may recover the whole amount of damage done the property, not exceeding the amount for which it was insured, whether his insurable interest is a title in fee simple, for life, or simply equitable." 6 Cooley's Briefs on Insurance (2d ed.), 5059. See also Trade Insurance Company v. Barracliff, 45 N. J. L. 543 (46 Am. R. 792); Andes Insurance Co. v. Fish, 71 Ill. 620. In Kludt v. German Mut. Fire Ins. Co., 152 Wis. 637 (140 N. W. 321, 45 L. R. A. (N. S.) 1131, Ann. Cas. 1914C, 609), it is said: "In the instant case, however, the deceased had an insurable interest, and the contract of insurance insured the property, not his interest. There is nothing in the policy or circumstances of the case to indicate that the deceased insured his interest merely. The loss was total, and the value of the property insured was in excess of the amount for which the property was insured. The damages recoverable, therefore, are the sum for which the property was insured."

The *property* in the case at bar was being insured. The company had notice of the interest of the assured. It has been held

86

by our courts that an action for damages for trespass will lie in favor of a tenant in possession of premises. *Ault* v. *Meager,* 112 *Ga.* 148 (37 S. E. 185); *Henson* v. *Taylor,* 108 *Ga.* 567 (33 S. E. 911); *Bass* v. *West,* 110 *Ga.* 698 (36 S. E. 244). As was remarked in Home Ins. Co. *v.* Gibson, supra, the insurance company is not concerned with the independent contracts and liabilities as between the lessor and lessee. With full knowledge of the assured's interest, it continued to insure the property for a named sum. The assured may, as against the company, recover such sum, provided it is not in excess of the value of the property destroyed by fire. In *Creech* v. *Richards,* supra, it was said: "One who leased homestead property from the head of the family for a term of years, and placed valuable improvements thereon had an insurable interest therein, and having insured the tenements on the property for his own benefit, upon the occurrence of a loss by fire, he alone was entitled to recover therefor." It is further stated in 26 C. J. 358: "In the absence of fraud or mistake, and where not otherwise limited by the policy, if the insured has an insurable interest at the time the policy is obtained and also at the time of the loss he is entitled to recover the whole amount of the loss not exceeding the amount of the insurance, regardless of the nature or extent of his peculiar interest."

We recognize the principle that an insurance contract is not a wagering contract, but a contract purely of indemnity, but where a company with knowledge of the insured's interest, as in the present case, elects to insure the property itself, rather than the insured's leasehold interest therein, and there is no fraud or mistake in the procurement of the policy, it becomes liable to the insured for the value of the property lost, not exceeding the amount for which it is insured. It appears from the evidence in the present case that the barn destroyed was erected by the insured and had been insured in this company for 10 or 12 years, with full knowledge of the character of his interest. In view of the authorities cited and the opinion that we entertain of the matter, the error, if any, in the charge of the court with reference to the barn being a trade fixture, becomes harmless. The amount sued for was $350, value of the barn, and $800, value of its contents. The verdict was for $726.83.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*